IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELVIN PRICE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-0175-O |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| | § | |
| Defendant. | § | |

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to the Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court for recommendation is *Defendant U.S. Bank National Association's Motion to Dismiss*, filed January 22, 2013 (doc. 8). Based on the relevant filings and applicable law, the motion should be **GRANTED.**

## I. BACKGROUND

This action involves foreclosure of real property located at 5089 Tersk Court, Grand Prairie, Texas 75052 (the Property). (docs. 1-3 at 5; 8-2 at 14.)[1] On December 11, 2012, Fabiola Price (Plaintiff) filed this *pro se* suit on behalf of herself and Melvin Price[2] against U.S. Bank National Association, as Trustee for C-BASS 2006-CB5 (U.S. Bank or Defendant) in the 116th Judicial District Court of Dallas County, Texas. (doc. 1-3 at 5.)

In her verified state court petition, Plaintiff avers she is the owner of the Property. (*Id.* at 5.) She purchased the Property on or about December 30, 2005, with a promissory note for $357,198.00

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] Although Melvin Price is also listed as a plaintiff, only Plaintiff signed and verified the complaint. (*See* doc. 1-3 at 6–7.) Because she may not represent any other party, only her personal claims are addressed on the merits.

and a deed of trust securing the note in favor of "Fremont Investment & Loan" (Fremont).  (*Id.*)  The note stated that "Lender or anyone who [was] entitled to receive payments under [the] Note [was] called the 'Note Holder.'" (doc. 8-1 at 5.)  The deed of trust provided that the note "or a partial interest" in it, together with the deed of trust, could "be sold one or more times without prior notice to Borrower."  (doc. 8-2 at 22.)  The deed of trust designated Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its successors and assigns and as the beneficiary under the deed of trust.  (*Id.* at 13.)  As Lender's nominee, MERS could exercise all of the interests that "Borrower" (Plaintiff) granted Lender under the deed of trust, including the right to foreclose and sell the Property upon Borrower's default, and to take any other action required of Lender, "including, but not limited to, releasing and canceling the deed of trust."  (*Id.* at 15.)

Plaintiff claims to "have no idea" who has owned the note since December 30, 2005.  (doc. 1-3 at 5.)  She alleges that she was never "provided with any notice of assignment or negotiation of the Note," and was notified only of a change in mortgage servicers.  (*Id.*)  On June 26, 2012, she allegedly sent Defendant "a Qualified Written Request [QWR] under the Real Estate Settlement Procedures Act (RESPA)" and under "the Truth-in-Lending Act (TILA)" "to ascertain whether [Defendant] [was] vested with legal authority to collect the mortgage payments and/or foreclose on the Property."  (*Id.*)  In the purported QWR, she requested that Defendant "provide [her] with all documents pertaining to [her] home [mortgage] loan" and with "proof" that Defendant owned the debt.  (*Id.*)  As of the date Plaintiff filed suit, she "ha[d] not received such documentation and/or confirmation from the Defendant."  (*Id.* at 5–6.)  In addition, Defendant did not "identify [the] accounting and servicing systems [it] used for [servicing] [her] account", nor did it "provide the name and address of the company that designed and sold the system[s] [to Defendant]."  (*Id.* at 6.)

2

Plaintiff alleges that Defendant has "steadfastly refuse[d] to produce any documents showing the chain of title of the Note and Deed of Trust." (*Id.*) She asserts that "[t]he fact that the Defendant cannot or will not provide documentation of [its] legal standing to foreclose is tantamount to admitting that [it] lack[s] [such] standing." (*Id.*) She claims Defendant "does not have the authority to foreclose on the Property" or "collect on the debt" because it is "not the actual holder of the original note or [of] a properly perfected security instrument" and has "never provided any proof" that it is "the duly appointed representative [of] the actual holder of the original note." (*Id.*)

The complaint expressly asserts a wrongful foreclosure claim, and the allegations implicating RESPA and TILA could be liberally construed as asserting claims under those statutes. (*See id.* at 5–6.) Plaintiff seeks declaratory judgment, an accounting "under RESPA," and injunctive relief to direct Defendant to "produce the one and only original Note," set aside the foreclosure, restore her title to the Property, and obtain permanent possession of the Property. (*Id.*)

On January 14, 2013, Defendant removed the action to this Court asserting diversity jurisdiction and federal question jurisdiction under 28 U.S.C. §§ 1331, 1332 (doc. 1), and moved to dismiss the complaint on January 22, 2013 (doc. 8). The motion is now ripe for recommendation.

## II. MOTION TO DISMISS UNDER RULES 8(a) & 12(b)(6)

Defendant moves to dismiss Plaintiff's complaint under Fed. R. Civ. P. 8(a)(2) and 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 8 at 3–10.)

### A.   <u>Legal Standards</u>

Under Rule 8(a)(2), "[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In turn, Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can

be granted.  Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-

duct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725. It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007);

*Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff has attached to the complaint copies of what appear to be portions of the promissory note and deed of trust she executed in Fremont's favor on December 30, 2005, as well as a "special warranty deed with vendor's lien" granted to her by the seller on that date. (*See* doc. 1-3 at 8–11.) These documents are considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. In addition, Defendant has attached to its motion to dismiss what it claims are complete copies of the promissory note and deed of trust. (docs. 8-2–8-3.) These documents are referenced in Plaintiff's complaint and are central to her claims, they are therefore considered part of the pleadings. *See Collins*, 224 F.3d at 498. Because the documents attached to Plaintiff's complaint and Defendant's motion to dismiss are considered part of the pleadings, conversion of the motion into a motion for summary judgment is unnecessary. *See Norris*, 500 F.3d at 461 n. 9.

**B.**  **Plaintiff's Standing to Challenge the Assignment of her Mortgage**

Defendant contends that Plaintiff "appear[s] to challenge the assignment of the Deed of Trust from the original Lender to [Defendant]."[3] (doc. 8 at 5.) Defendant moves to dismiss the complaint arguing that "federal courts sitting in Texas have consistently held that [mortgagors] lack standing"[4]

---

[3]  "[A]n assignment is a contract between the assignor of a right and an assignee, who receives the authority to assert that right." *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex. App.—El Paso 2010, pet. denied); *accord D Design Holdings, LP v. MMO Corp.*, 339 S.W.3d 195, 200–01 (Tex. App.—Dallas 2011, no pet.).

[4]  "Standing has both constitutional and prudential aspects." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 n.9 (5th Cir. 2001) (citation omitted). The argument that non-parties lack standing to challenge an assignment of a deed or note implicates prudential standing. Prudential standing encompasses "[j]udicially created limits" that concern whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). In essence, prudential standing "goes to whether the law on which the claim rests properly can be

to challenge "the assignment of their mortgage." (*Id.* at 5–6.)

Numerous district courts in Texas have held that "borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments." *Kidd v. Fed. Nat. Mortg. Ass'n*, No. 3:12-CV-1733-B, 2012 WL 4900962, at *2 (N.D. Tex. Oct. 15, 2012) (collecting cases); *see also Abruzzo v. PNC Bank, N.A.*, No. 4:11-CV-735-Y, 2012 WL 3200871, at *2 (N.D. Tex. July 30, 2012) (holding that the "Plaintiffs [did] not have standing to ... challenge" the assignment of their mortgage from a securitization trust to the defendant, which allegedly violated the governing PSA, "because they were not parties" to the PSA).

Citing to Texas law, however, some district courts have recognized two exceptions: (1) the obligor of an assigned "claim may defend [a] suit brought thereon on any ground which renders the assignment void, but ... not ... voidable,"[5] and (2) "under very limited circumstances, ... a defendant sued on a negotiable instrument [may] assert defenses and claims held by others." *Kramer v. Fannie Mae*, No. A–12–CA–276–SS, 2012 WL 3027990, at *4–5 (W.D. Tex. May 15, 2012) (citing to *Tri–Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ) and Tex. Bus. & Com. Code § 3.305(c)); *see also Rodriguez*, 2013 WL 1773670, at *5; *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012); *Miller*, 2012 WL 3206237, at *5.

A debtor can challenge a void contract of assignment "because a void assignment would not

---

understood as granting persons in the plaintiff's position a right to judicial relief." *Rodriguez v. Bank of Am., N.A.*, No. SA-12-CV-00905-DAE, 2013 WL 1773670, at *4 (W.D. Tex. Apr. 25, 2013) (internal quotations omitted). "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011).

[5] "Examples of 'voidable' defenses include the statute of frauds, ... fraud in the inducement, ... lack of capacity as a minor, ... and mutual mistake." *Miller v. Homecomings Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012); *see also* Tex. Bus. & Com. Code Ann. § 3.202(a) (West 2002) (listing voidable defenses against the enforcement of a negotiable instrument).

pass title, and the debtor has an interest to insure [*sic*] himself that he will not have to pay the same

claim twice." *Washington v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at \*8

(W.D. Tex. Feb. 20, 2013) (citation omitted); *accord Tri–Cities Const., Inc.*, 523 S.W.2d at 430.

With respect to the assignment of a mortgage loan, "[a] void contract of assignment confers no right

to foreclose under the deed on the purported assignee while a voidable contract transfers the deed

to the assignee—including the rights contained in it—subject to the rights of the assignor to set it

aside upon proof [that] the contract was executed improperly."[6] *Puente*, 2012 WL 4335997, at \*6

n. 14 (citing to *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942)); *see also Glass*

*v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.)

(distinguishing between void and voidable assignments). In *Kramer*, the court held that the plaintiff

could not challenge the assignment of the deed of trust from the lender to the defendants because

neither exception applied, given that in foreclosing on the mortgaged property, the "[d]efendants did

not sue [the plaintiff] at all, and, even if they had, their suit would have been on the deed of trust,

not the ... promissory note … [and] there [was] no suggestion [he] [was] being put in a position

where he [would] have to pay the same claim twice." *Kramer*, 2012 WL 3027990, at \*5.

Here, while Plaintiff does not expressly challenge the assignment of her mortgage from

Fremont, "the original lender," to Defendant, she claims to "have no idea who has owned the [n]ote"

since December 2005 because she has never "been provided with any notice of assignment or

negotiation" of the note.  (doc. 1-3 at 5.) She claims Defendant cannot foreclose on the Property

because it has "steadfastly refuse[d] to produce any documents showing the chain of title of the Note

and Deed of Trust to prove that [it] [has] legal standing to foreclose." (*Id.* at 6.)  As in *Kramer*,

---

[6] "This rule accords with [the] principle of contract law" that a "void contract is 'invalid or unlawful from its inception' and therefore cannot be enforced." *Rodriguez*, 2013 WL 1773670, at \*5 (citing 17A C.J.S. Contracts § 169).

however, Plaintiff does not allege that Defendant has sued her on the note or has put her in a position

where she will have to pay the same claim twice. *See Kramer*, 2012 WL 3027990, at *5. She also

fails to allege or assert any facts showing that Fremont never assigned the mortgage to Defendant.

(*See* doc. 1-3 at 5–6.) Nor does she bring forth any facts raising a reasonable inference that an

assignment did take place but it was somehow void or voidable. Plaintiff has therefore failed to

allege sufficient facts from which it could be determined that she has standing to challenge the

assignment, if any, of her mortgage loan from Fremont to Defendant. *See Puente*, 2012 WL

4335997, at *6 (holding that the court could not determine whether the plaintiffs had standing to

challenge the assignment of the deed of trust from MERS to the defendant because it was "unclear

from [their] complaint whether they allege[d] (1) that the assignment ... [was] *voidable* because, for

example, ... the procedures ... employed were faulty, or (2) that the assignment was *void* and

therefore invalid") (emphasis in *Puente*).

To the extent that Plaintiff attempts to challenge the assignment of her mortgage and bases

her claims for relief on that challenge, the claims are subject to dismissal for failure to state a claim.

*See Kidd*, 2012 WL 4900962, at *2 (dismissing quiet title claim and request for declaratory

judgment where the plaintiff's theories for recovery were "based entirely on assignments and

agreements to which [she] was not a party" and where she "[had] not ... alleged that multiple parties

ha[d] attempted or [would] attempt to collect from [her]").

## C. "Show-me-the-Note" Theory

According to Defendant, Plaintiff's "entire case rests on 'show-me-the-note-type' theories."

(doc. 8 at 6.) It argues that "any purported claims asserted by Plaintiff[] fail as a matter of law"

because the "show-me-the-note" theory "has been consistently and universally rejected by the Texas

federal courts because Texas foreclosure statutes simply do not require possession or production of the original note as a prerequisite to foreclosure." (*Id.*)

Plaintiff alleges that "the Defendant ... seeking to foreclose on [the Property] is not a party to the note or deed of trust." (doc. 1-3 at 5.) She contends that Defendant "does not have the authority to foreclose on the Property" or "collect on [the] debt" because it is not the holder of the "note" or of a "properly perfected security instrument" and has "never provided any proof" that it is "the duly appointed representative" or the note holder. (*Id.* at 6.) She asserts that "[t]he fact the Defendant cannot or will not provide documentation" showing it has "legal standing to foreclose" on the Property is "tantamount to admitting" that it "lack[s] [such] standing." (*Id.*)

Plaintiff's allegation that Defendant cannot foreclose on the Property because it is "not the actual holder of the original note" implicates the "show-me-the-note" theory. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *rec. adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted). The theory has been repeatedly rejected in this Circuit as having no merit. *Bennett*, 2012 WL 2864751, at *3; *Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases); *see also Martins v. BAC Home Loans Servicing, L.P.* — F.3d — , No. 12-20449, 2013 WL 3213633, at *2 (5th Cir. June 26, 2013).

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July

25, 2011).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property."  *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.).  When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument."[7]  *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note."  *Reardean*, 2011 WL 3268307, at *3.

Chapter 51 of the Texas Property Code governs the procedure for enforcing the "power of sale conferred by a deed of trust or other contract lien."  Tex. Prop. Code Ann. § 51.002 (West 2007).  Pursuant to the Code, both "a mortgagee and [a] mortage servicer may administer a deed of trust foreclosure without production of the original note."  *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per curiam) (citing to Tex. Prop. Code §§ 51.0002, 51.0025).  A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  Tex. Prop. Code Ann. § 51.0001(4)(A)–(C).  A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument."  *Id.* § 51.0001(3).  A mortgagee may be its own mortgage servicer.  *Id.*

---

[7] The Texas Uniform Commercial Code (UCC) governs the procedure for establishing "holder" status.  *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203, and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

If the mortgagee is its own mortgage servicer, it may conduct a non-judicial foreclosure sale by following the procedures provided by the Code.[8]  *Martins*, 2013 WL 3213633, at *3.  The mortgagee need not produce the original note because its authority to foreclose is determined solely by its "relationship to the deed of trust, rather than the associated note."  *Kramer*, 2012 WL 3027990, at *7; *see also Martins*, 2013 WL 3213633, at *3 (explaining that Texas law does not require possession of the note as a requisite to foreclosure since a "deed of trust gives the lender as well as the beneficiary [of the deed of trust] the right to invoke the power of sale, even though it would not be possible for both to hold the note") (citation and internal quotation marks omitted).

A mortgage servicer may administer a foreclosure sale on behalf of a mortgagee, as long as the two entities enter into a servicing agreement and provide the borrower with certain disclosures. *See* Tex. Prop. Code § 51.0025.  As courts have noted, however, no provision of § 51.0025 "require[s] the mortgage servicer to be the 'holder' of the Note and Deed of Trust or to produce the original loan documents."  *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *rec. adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Martins*, 2013 WL 3213633, at *3 ("[T]he mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure."); *Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (noting that § 51.0025 "contemplates that someone other than the holder of the original [loan documents] may lawfully foreclose on the security interest").

---

[8]  For instance, § 51.002(d) of the Tex. Prop. Code requires the mortgage servicer to provide to the debtor notice of default and intent to accelerate and to give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code § 51.002(d). If the mortgage servicer invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *See id.* § 51.002(b).

Accordingly, Plaintiff's contention that Defendant lacked authority to foreclose because it was not the "actual holder of the original note or a [of] properly perfected security instrument" cannot support any claim against Defendant as a matter of law.  *See Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *2 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.); *Martins*, 2013 WL 3213633, at *4 (holding that the plaintiff's "theories regarding improper foreclosure relating to possession of the note," one of which was his "show-me-the-note" theory, were "unavailing" because the theories were inapplicable under Texas law).  Moreover, Plaintiff does not allege or assert any facts showing that Defendant lacked standing to foreclose because it was neither the mortgagee nor mortgage servicer.[9]  *See Bennett*, 2012 WL 2864751, at *3 (rejecting the plaintiff's allegation that the defendant could not foreclose where the allegation was based on his "show-me-the-note" theory and he "[did] not claim that [the defendant] was not the mortgagee or mortgage servicer on the mortgage loan, or [assert] any facts to support such allegations").  To the extent that Plaintiff's claims are based on her invalid "show-me-the-note" theory, the claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim.

**D.     Wrongful Foreclosure**

Defendant also contends that Plaintiff has "failed to state a claim for wrongful foreclosure" because, in addition to basing the claim on her failed attempt to challenge the assignment of her mortgage and on her invalid "show-me-the-note" theory, Plaintiff has "wholly failed to allege a grossly disproportionate sales price, or any facts that would show that the disproportionate sales price resulted form [an] alleged defect" in the foreclosure process.  (doc. 8 at 5.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud,

---

[9]  Plaintiff even concedes that after she obtained her mortgage loan from Fremont, she received notice of a change in mortgage servicers.  (doc. 1-3 at 5.)

and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.). "A grossly inadequate price ... [has] to be so little as to shock a correct mind." *Martins*, 2013 WL 3213633, at *4 (citations omitted).

Here, Plaintiff alleges that the foreclosure was "wrongful" because Defendant "had no standing to foreclose" on the Property. (doc. 1-3 at 6.) As discussed, Plaintiff's theory that Defendant lacked standing to foreclose because it was not the holder of the "note" or of a "perfected security instrument" cannot support any claim against Defendant as a matter of law. Moreover, even assuming for purposes of this motion that there was an actionable "defect" in the foreclosure proceedings, such an assumption could not plausibly entitle her to relief because she does not assert

14

any facts showing that the Property was sold for a grossly inadequate price, i.e., a price "so little as to shock a correct mind." *See Martins*, 2013 WL 3213633, at *4; *Biggers*, 767 F. Supp. 2d at 729. She also fails to allege a causal connection between a procedural defect and any grossly inadequate selling price. Her wrongful foreclosure claim therefore fails and should be dismissed. *See Byrd v. Chase Home Fin. LLC*, No. 4:11-CV-022-A, 2011 WL 5220421, at *4 (N.D. Tex. Oct. 31, 2011) (dismissing wrongful foreclosure claim where the plaintiffs alleged a defect but they did not allege any facts establishing the other elements of the claim, including a grossly inadequate selling price resulting from such a defect); *see also Pollett v. Aurora Loan Services*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) (affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege (1) that his home was sold for a grossly inadequate selling price and (2) a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price").

## E.    RESPA

Defendant next moves to dismiss Plaintiff's RESPA claim on grounds that the claim is factually unsupported because Plaintiff does not assert any facts showing that her alleged communication was a "qualified written request" or that she suffered "any actual damages" as a result of Defendant's purported failure to respond to her communication. (doc. 8 at 9–10.)

RESPA protects borrowers by requiring lenders of federally-related mortgage loans to fully and clearly disclose all settlement costs and by prohibiting predatory practices in the lending and servicing of mortgage loans. *See* 12 U.S.C.A. §§ 2601(a), 2605–2608 (West 2011); *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex.

May 19, 2011).  Pursuant to RESPA, if a loan servicer receives a qualified written request (QWR)[10]

from the borrower for information about the loan, the servicer must acknowledge the receipt of the

QWR within 20 days unless it takes other action requested by the borrower within that time-frame.

12 U.S.C.A. §§ 2605(e)(1)–(2); 24 C.F.R. § 3500.21(e) (2012).  In addition, the servicer must take

corrective action within 60 days of receiving the QWR, including crediting any late charges or

penalties or conducting an investigation and providing the borrower with a written explanation of

the reasons for the action and the name and telephone number of an employee of the servicer to

whom the borrower can direct any further inquiry on the matter.  12 U.S.C.A. § 2605(e)(1)(B).  To

recover for a violation of § 2605, the borrower must allege actual damages resulting from the

violation.  *Id.* § 2605(f)(1)(A); *Hurd*, 880 F. Supp. 2d at 768.

Here, Plaintiff alleges that on June 26, 2012, she mailed Defendant a "qualified written

request" "to ascertain whether [Defendant] [was] vested with legal authority to collect the mortgage

payments and/or foreclose on the Property." (doc. 1-3 at 5.)  She requested that Defendant "provide

[her] with [] all documents pertaining to the [mortgage] loan from its inception" and that it send her

"proof" that it owned the loan.  (*Id.*)  She claims Defendant not only failed to respond to the request,

but "steadfastly refuse[d] to produce any documents showing the chain of title of the Note and Deed

of Trust."  (*Id.* at 6.) She requests "an accounting" "of the amounts [she] paid" under RESPA.  (*Id.*)

Plaintiff fails to sufficiently allege the communication was a QWR, as she does not allege

---

[10]  A QWR is:

> A written correspondence, other than notice on a payment coupon or other payment medium supplied
> by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account
> of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the
> extent applicable, that the account is in error or provides sufficient detail to the servicer regarding
> other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B).  The QWR must relate to the "servicing" of the loan, which is defined as "receiving any
scheduled periodic payments from a borrower" and "making the payments of principal and interest ... received from the
borrower as may be required pursuant to the terms of the loan."  *Id.* §§  2605(i)(3), 2605(e)(1)(A).

that her correspondence included information that enabled Defendant to identify her account number, that it stated her reasons for believing the account was in error, or that it provided Defendant with sufficient detail about the information Plaintiff was seeking. *See* 12 U.S.C.A. § 2605(e)(1)(B) (to be a QWR, the borrower's correspondence must contain enough information to enable the servicer to identify the account in question and the borrower's reasons for disputing it). Further, Plaintiff has not alleged any facts giving rise to a reasonable inference that she suffered actual damages from Defendant's purported failure to respond.   She has therefore failed to sufficiently state a claim for relief under § 2605(e).  *See Hurd*, 880 F. Supp. 2d at 768 (dismissing claim under § 2605(e) where the plaintiff failed to allege actual damages); *Akintunji v. Chase Home Fin., L.L.C.*, No. H-11-389, 2011 WL 2470709, at *2–3 (S.D. Tex. Jun. 20, 2011) (same); *Hill v. Wells Fargo Bank*, NA, No. 4:11-CV-644-A, 2011 WL 5869730, at *3 (N.D. Tex. Nov. 17, 2011) (dismissing claim under § 2605(e) where the plaintiffs failed to sufficiently allege that they sent a communication meeting the requirements of a QWR and failed to make any allegation from which the court could conclude that they suffered damages as a result of defendant's alleged failure to respond to their written requests).

**F.**     **TILA**

Plaintiff's complaint may be liberally construed as asserting a claim under §1641(g) of TILA, for Defendant's purported failure to notify her of her mortgage transfer.  (*See* doc. 3 at 2, 9.)

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Schieroni v. Deutsche Bank Nat. Trust Co.*, No. CIV.A. H-10-663, 2011 WL 3652194, at *3 (S.D. Tex. Aug. 18, 2011) (citations omitted). Section 1641(g) was added to TILA by the "Act to Prevent Mortgage Foreclosures and Enhance

Mortgage Credit Availability of 2009," Pub. L. 111-22, § 404(a), 123 Stat. at 1658.  Specifically, § 1641(g) provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" and provide the borrower with certain disclosures.  15 U.S.C.A. § 1641(g)(1) (West 2011).  The statute grants borrowers "a private right of action for civil liability against any creditor that fails" to comply with this requirement.  *Jameel v. Flagstar Bank, FSB*, No. CIV.A. H-12-1510, 2012 WL 5384177, at *7 (S.D. Tex. Nov. 2, 2012).  A borrower may recover "actual damage[s] sustained ... as a result of the [creditor's] failure" to comply with the Act and statutory damages, which may be up to "twice the amount of any finance charge in connection with the transaction." 15 U.S.C.A. § 1640(a)(1)–(2).

Here, Plaintiff alleges that she was not given "any notice of assignment or negotiation of the Note."  (doc. 1-3 at 5.)  She avers that on June 26, 2012, she sent Defendant a written communication pursuant to TILA, requesting that Defendant produce documents showing it was "vested with legal authority to collect the mortgage payments and/or foreclose on the Property." (*Id.*)  Nevertheless, Plaintiff also contends that she has "no idea" who has owned the note since December 2005.  (*Id.* at 6.)  She claims Defendant could not foreclose and was "not entitled to collect on the debt" because it was not the holder of the note or of "a properly perfected security instrument."  (*Id.*)  With these allegations, Plaintiff essentially contends that Defendant was not the "new owner" or "assignee" of her mortgage.  (*See id.*)  Plaintiff's allegations are conflicting since to recover against Defendant for failure to comply with § 1641(g) of TILA she would have to allege and prove that her mortgage was sold or transferred to Defendant, but she essentially argues that the opposite was the case.  (*See id.*) The allegations therefore fail to state a viable claim under §

1641(g).  *See Jameel*, 2012 WL 5384177, at *8 (holding that to state a claim under § 1641(g), the plaintiff must "allege[] facts showing that [the defendant] [was] the new owner or assignee and that it failed to meet the notification requirement [of] § 1641(g)").

To the extent Plaintiff asserts a claim against Defendant under § 1641(g) of TILA, the Court may *sua sponte* dismiss the claim on its own motion under Rule 12(b)(6) as long as Plaintiff is given notice of the Court's intention and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (explaining that a "court has the authority to consider the sufficiency of a complaint and dismiss an action on its own motion as long as the procedure employed is fair") (citing *Carroll*, 470 F.3d at 1177).  The fourteen days allowed for filing objections to the recommended dismissal ensures that the procedure is fair by providing Plaintiff with notice and an opportunity to respond. *See Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

## G.    Declaratory Judgment Action

Plaintiff seeks declaratory relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 1-3 at 6.)

"The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  This removed action may therefore be construed as arising under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is

subsequently removed to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201 (West 2010). The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.*

Here, Plaintiff seeks declarations that: (1) Defendant "had no standing to foreclose"; (2) "the foreclosure was wrongful"; (3) the substitute trustee's deed issued in favor of Defendant "is void"; and (4) "the foreclosure sale [was] void." (doc. 1-3 at 6.) Her requested declarations are entirely premised on her invalid "show-me-the-note" theory. (*See id.* at 5–6.) Ultimately, given Plaintiff's failure to state a viable claim for relief against Defendant or show that a genuine controversy exists between the parties, her declaratory judgment action should be dismissed. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner*, 2011 WL 3606688, at *5–6 (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## H.     <u>Injunctive Relief</u>

In addition to her substantive claims and declaratory judgment action, Plaintiff also requests

injunctive relief.  (*See* doc. 1-3 at 6.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson*, 2011 WL 3874860, at *3 (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Here, Plaintiff seeks injunctive relief to set aside the foreclosure, cancel the substitute trustee's deed, and recover title to the Property and obtain its possession.  (doc. 1-3 at 6.)  Because her substantive claims are subject to dismissal on the merits, she cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3.  Plaintiff's request for injunctive relief should therefore be denied.

### III.  MELVIN PRICE'S CLAIMS

Plaintiff filed this action *pro se* in state court on behalf of Melvin Price, but he did not sign the complaint.

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  28 U.S.C.A. § 1654.  "[I]ndividuals who do not have a law license may not represent other parties in federal court even on a next friend basis", however.  *Weber v. Garza,* 570 F.2d 511, 514 (5th Cir.1978); *see also Guajardo v. Luna,* 432 F.2d 1324 (5th Cir.1970) (holding that only licensed lawyers may represent others in federal court).  Plaintiff may therefore not bring this *pro se* case on behalf of Mr. Price.  Because only Plaintiff signed the complaint, and because she may not represent him, the claims of Melvin Price should be dismissed without prejudice.

### IV.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.*

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically

allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a

court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D,

2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff

may also obtain leave to amend his complaint in response to a recommended dismissal.  *See*

*Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex.

Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an

action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to

a motion to dismiss after being specifically invited to do so by the court, the defendant has

specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the

complaint.  *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).  Dismissal with prejudice is

also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*,

188 F.3d 322, 327 (5th Cir. 1999).

   Here, Plaintiff has not amended her complaint since she filed this action in state court.  She

did not respond to Defendant's motion to dismiss after being specifically invited to do so by the

Court.  (*See* docs. 9; 11).  Nevertheless, because it does not appear that Plaintiff has stated her best

case to the Court with respect to any of her claims, she should be accorded an opportunity to amend

the complaint to sufficiently state a claim for relief.  If Mr. Price seeks to join in this action, he must

file his own complaint under his own signature, or he and Plaintiff may file an amended complaint

that is jointly signed by both.

## IV.  RECOMMENDATION

If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED,** and all of Plaintiff's claims against Defendant should be dismissed with prejudice.  All claims on behalf of Mr. Price should also be dismissed, but without prejudice.  If Plaintiff timely files an amended complaint, however, Defendant's motion to dismiss should be **DENIED as moot,** and the action should be allowed to proceed on the amended complaint only as to Plaintiff, unless Mr. Price also joins and signs the complaint.

**SO RECOMMENDED** on this 12th day of July, 2013.

_IRMA CARRILLO RAMIREZ_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_IRMA CARRILLO RAMIREZ_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE