**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MELVIN PRICE, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:13-CV-0175-O** |
| | § | |
| **U.S. BANK NATIONAL ASSOCIATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court for recommendation is *Defendant U.S. Bank National Association's Motion to Dismiss*, filed August 9, 2013 (doc. 15). Based on the relevant filings and applicable law, the motion should be **GRANTED.**

## I. BACKGROUND[1]

This action involves the foreclosure of real property located at 5089 Tersk Court, Grand Prairie, Texas 75052 (the Property). (doc. 13 at 2.)[2] On December 11, 2012, Fabiola Price (Plaintiff) filed this *pro se* suit against U.S. Bank National Association, as Trustee for C-BASS 2006-CB5 (Defendant) in state court. (Orig. Compl. (doc. 1-3) at 5.) Defendant removed the action to federal court on the basis of diversity jurisdiction on April 14, 2013, and later moved to dismiss the complaint for failure to state a claim. (docs. 1 and 8.) Although she failed to state any viable claims, Plaintiff was granted an opportunity to amend her complaint to avoid dismissal. (Order

---

[1] The first amended complaint "incorporates" by reference "all the facts stated in [the] original complaint." (Am. Compl. (doc. 13) at 2). Accordingly, this factual summary is compiled from both complaints.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Accepting Recommendation of U.S. Magistrate Judge (doc. 14).)

Plaintiff claims to have purchased the Property on or about December 30, 2005, with a mortgage loan from Fremont Investment & Loan (Fremont) in the amount of $357,198.00. (doc. 13 at 2.) She executed an "adjustable rate" note and a deed of trust securing the note in Fremont's favor. (*Id.*) Both the note and deed of trust named Plaintiff as "Borrower"[3] and Fremont as "Lender." (D. Mot. App. (note) (doc. 15-1) at 1, 5; (deed of trust) (doc. 15-2) at 1.) The note provided that Lender "may" transfer the note, and that Lender or anyone who took the note by transfer was the note "holder." (doc. 15-1 at 1, ¶ 1.) Similarly, the deed of trust provided that the note or a partial interest of the note, together with the deed of trust, could "be sold one or more times without prior notice to Borrower." (doc. 15-2 at 11–12, ¶ 20.) The deed of trust also designated Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its successors and assigns and as the beneficiary under the deed of trust. (*Id.* at 2, ¶ E.) As Lender's nominee, MERS could exercise any and all of the interests Borrower granted Lender, including the right to foreclose and sell the Property upon default, and to take any other action required of Lender, "including, but not limited to, releasing and canceling the deed of trust." (*Id.* at 4.)

On October 15, 2008, Plaintiff, Defendant, and MERS entered into a "Loan Modification Agreement." (D. Mot. App. (doc. 15-3).) "In consideration of the mutual promises and agreements exchanged," Plaintiff promised to pay $375,063.94 at a yearly interest rate of 5.690 percent. (*Id.* at 2.) Plaintiff's monthly payments of $1,909.81 would begin on December 1, 2008 and would end on January 1, 2036. (*Id.*) Pursuant to the agreement, the "covenants, agreements, stipulations, and conditions" under the note and deed of trust remained "in full force and effect," and Plaintiff "ha[d]

---

[3] Melvin Price was also named as "Borrower," but he is not a party in this action. (*See* docs. 15-1 at 1, 5; 15-2 at 1.)

no right of set-off or counterclaim, or any defense to the obligations" under these instruments. (*Id.*) Plaintiff and representatives for Defendant and MERS signed the agreement. (*Id.* at 4–5.) The agreement was recorded with the Dallas County Clerk. (*Id.* at 8.)

Plaintiff now claims to "have no idea" who has owned the note since December 30, 2005. (doc. 1-3 at 5.) She alleges that she was never "provided with any notice of assignment or negotiation of the Note," and was notified only of a change in mortgage servicers. (*Id.*) On June 26, 2012, she allegedly sent Defendant "a Qualified Written Request" (QWR) pursuant to the Real Estate Settlement Procedures Act (RESPA) and the Truth-in-Lending Act (TILA), asking Defendant to provide her with "all documents" pertaining to her mortgage loan and "proof" that it owned the debt. (doc. 1-3 at 2.) As of the date she filed suit, she "ha[d] not received such documentation and/or confirmation from the Defendant." (*Id.* at 5–6.) Neither did Defendant provide her with "the name and address of the company that designed and sold" its accounting systems to Defendant. (*Id.* at 6.) She claims Defendant is "not the actual holder of the original note" or a "properly perfected security instrument." (*Id.*) Defendant has "never provided any proof" that it is "the duly appointed representative" of the holder. (*Id.*) She asserts that any assignment of her mortgage by MERS to Defendant was invalid because MERS did not hold the note. (doc. 13 at 2.) She therefore concludes that Defendant lacked standing to collect on the note and foreclose on the Property. (*Id.*)

The first amended complaint asserts claims for gross negligence, suit to quiet title, and trespass to try title, as well as for violations of the Texas Debt collection Practices Act (TDCPA), the Texas Deceptive Trade Practices Act (DTPA), certain amendments to the TILA and RESPA statutes under the federal Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the Dodd-Frank Act), and the Racketeer Influenced and Corrupt Organizations Act (RICO). (doc. 13

at 2–5.)  The amended complaint also mentions the Federal Trade Commission Act (FTCA) and "fraud."  (*Id.* at 4.)  Plaintiff seeks damages, attorney's fees, court costs, and injunctive relief to "set aside" the foreclosure and restrain Defendant from evicting her from the Property.  (*Id.* at 3–6.)

On August 9, 2013, Defendant moved to dismiss the first amended complaint for failure to state a claim.  (doc. 15.)  With a timely-filed response (doc. 17) and reply (doc. 18), the motion is now ripe for recommendation.

## II.  MOTION TO DISMISS UNDER RULES 8(a) & 12(b)(6)

Defendant moves to dismiss Plaintiff's complaint under Fed. R. Civ. P. 8(a)(2) and 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 15.)

## A.  <u>Legal Standards</u>

Under Rule 8(a)(2), "[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). In turn, Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must

show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude

the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725.  It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Defendant has attached to its motion copies of what it claims are complete copies of the promissory note, the deed of trust, and the modification agreement.  (docs. 15-1–15-3.)  The note and deed of trust are referenced in Plaintiff's complaint and are central to her theory of the case; they are therefore considered part of the pleadings.  *See Collins*, 224 F.3d at 498.  The modification agreement can be judicially noticed because it is a matter of public record whose contents cannot reasonably be disputed.  *See Norris*, 500 F.3d at 461 n. 9; *see also* Fed. R. Evid. 201(b)(2) (a court

6

may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Conversion of the motion to dismiss into a motion for summary judgment is therefore unnecessary. *See Collins*, 224 F.3d at 499; *Norris*, 500 F.3d at 461 n. 9.

**B.     Release of Claims**

Defendant first contends that all of Plaintiff's claims should be dismissed because they are barred by the "release" provision of the loan modification agreement that Plaintiff executed in October 2008. (doc. 15 at 17.)

In *Heaven v. Chase Home Fin. LLC*, No. 3:08-CV-1872-L, 2009 WL 3163546 (N.D. Tex. Sept. 30, 2009) (emphasis added), the plaintiff brought suit for negligence, breach of contract, failure to issue the requisite foreclosure notices, and violations of the TDCPA and of a federal statute relating to mortgage insurance. *Id.* at *1. The district court held that where the plaintiff had "signed a loan modification agreement to restructure her debt after defaulting on the original loan" and the "agreement include[d] a release of all [the] Plaintiff's claims against [the foreclosing defendant] arising out of the loan," all of her claims arising from the foreclosure of her home were barred by the release. *Id.* at *5. The court determined that dismissal of the plaintiff's claims was appropriate because all of her allegations fell "*within the contemplation* of the modification agreement's release of claims." *Id.* (emphasis added).

Here, the release provision in the modification agreement stated that Plaintiff "ha[d] no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument." (doc. 15-3 at 3). The first amended complaint lists claims for gross negligence, quiet title, trespass to try title, and violations of the TDCPA, the DTPA, TILA, RESPA, and RICO. (*See* doc. 13 at

2–5.)  It also mentions the FTCA and common law fraud.  (*Id.* at 4.)  Plaintiff's claims could reasonably be said to arise out of the "loan agreement" and Defendant's subsequent foreclosure, so they are barred by the "release" provision of the loan modification agreement.  Given Plaintiff's *pro se* status, however, her claims are also addressed on the merits in an abundance of caution.  *See Miller*, 636 F.2d at 988.

## C.    State Law Claims

Plaintiff expressly lists state law claims for violations of the TDCPA and the DTPA, as well as for suit to quiet title, trespass to try title, and gross negligence.  (doc. 13 at 2–5.)  The complaint also mentions fraud.  (*See id.* at 4.)

### *1.    TDCPA*

Defendant seeks dismissal of Plaintiff's claims under the TDCPA on grounds that the claims are factually unsupported.  (doc. 15 at 17.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers."  *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  The TDCPA defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection."  Tex. Fin. Code Ann. § 392.001(6) (West 2006).  In turn, "debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.* § 392.001(5).  This can include "actions taken in foreclosing [on] real property."  *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 5

(N.D. Tex. Jan. 20, 2012).  Defendant's foreclosure may therefore fall within the purview of the TDCPA.  *See Sanghera*, 2012 WL 555155, at *7.

       a.       <u>Section 392.303(a)(2)</u>

In debt collection, § 392.303(a)(2) prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."  Tex. Fin. Code Ann. § 392.303(a)(2) (West 2005).

Plaintiff complains that "the acts, omissions, and conduct by [unspecified] Defendants constitute violations" of § 392.303(a)(2).  (doc. 13 at 3.)  She does not identify, however, any interest, charge, fee, or expense incidental to her mortgage that Defendant attempted to collect.  The only dollar figure stated in her pleadings is her allegation that she purchased the Property with a loan from Fremont in the amount of $357,198.00.  (doc. 1-3 at 5.)  Without any specific facts in support, her claim under § 392.303(a)(2) is subject to dismissal for failure to state a claim.  *See Iqbal*, 556 U.S. at 678 (to survive dismissal, the complaint must provide sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

       b.       <u>Section 392.304(a)(10)</u>

During debt collection, or obtaining information concerning a consumer, § 392.304(a)(10) prohibits a debt collector from "using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval."  Tex. Fin. Code Ann. § 392.304(a)(10) (West 2004).

As with the previous claim, Plaintiff states only that "the acts, omissions, and conduct by [unspecified] Defendants constitute violations" of § 392.304(a)(10).  (doc. 13 at 3.)  She does not point to any "written communication" that Defendant used, distributed, or sold that falsely represented to be "authorized, issued, or approved" by a court or any other governmental entity.  She instead claims Defendant has "steadfastly refused" to produce any documents showing "the chain of title" of the note and deed of trust, has never provided her with notice of the assignment of her mortgage, and failed to respond to her QWR.  (doc. 1-3 at 5–6.)  These allegations negate any inference that Defendant has communicated with Plaintiff.  Accordingly, this claim is also factually unsupported and should be dismissed for failure to state a claim.  *See Iqbal*, 556 U.S.  at 678.

      c.      Section 392.301(a)(8)

Section 392.301(a)(8) of the TDCPA provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ . . . threatening to take an action prohibited by law."  Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006).

Plaintiff alleges only that "the acts, omissions, and conduct by [unspecified] Defendants constitute violations" of § 392.301(a)(8).  (doc. 13 at 3.)  She does not allege or assert any facts showing Defendant took or threatened to take an action prohibited by law.  To the extent this claim is based on her contention that Defendant could not foreclose because it was not the holder of the note or of a duly perfected security instrument, the Court has already dismissed these "show-me-the-note" allegations as meritless.  *See Price v. U.S. Bank Nat. Ass'n*, No. 3:13-CV-0175-O, 2013 WL 3976624, at *7 (N.D. Tex. Aug. 2, 2013) ("Plaintiff's contention that Defendant lacked authority to foreclose because it was not the 'actual holder of the original note or a[of] properly perfected security instrument' cannot support any claim against Defendant as a matter of law."); *see also*

*Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013) ("We find no []
Texas authority requiring production of the 'original' note. The original, signed note need not be
produced in order to foreclose.").   Notably, Plaintiff does not allege that Defendant could not
foreclose because there was no default on her mortgage.   *See Swim*, 2012 WL 170758, at * 5 ("[T]he
TDCPA 'does not prevent a debt collector from . . . exercising or threatening to exercise a statutory
or contractual right of seizure, repossession, or sale that does not require court proceedings.'")
(citing to Tex. Fin. Code § 392.301(b)(3)); *Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF,
2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) (holding that "foreclosure or the threat of
foreclosure, is not an action prohibited by law when a plaintiff has defaulted on [his] mortgage").
Because Plaintiff fails to state a plausible claim for relief under § 392.301(a)(8), this claim should
also be dismissed.

### 2.    DTPA "Tie-in" Claim

Defendant construes the complaint as asserting a claim under the "tie-in" provision of the
DTPA for alleged violations of the TDCPA, RESPA, and TILA.   (doc. 15 at 20.)   It argues that the
purported tie-in claim fails because Plaintiff "is not a consumer under the [DTPA]."   (*Id.* at 21.)[4]

The TDCPA provides: "A violation of this chapter is a deceptive trade practice under [Tex.
Bus. Com. Code § 17.50(h)], and is actionable under that subchapter." Tex. Fin. Code Ann.
§ 392.404(a) (West 2006).   In turn,  § 17.50(h) of the DTPA, grants a private right of action under
the DTPA to a claimant seeking to recover under the TDCPA.   *Garcia v. Jenkins/Babb LLP*, No.
3:11-CV-3171-N-BH, 2013 WL 3789830, at *12 (N.D. Tex. July 22, 2013) (citation omitted); *see*

---

[4] Defendant also contends that the tie-in claim fails because Plaintiff does not state plausible claims for relief under the
TDCPA, TILA, or RESPA.   (doc. 15 at 20–21.)   Because the "consumer" issue is dispositive, it is unnecessary to reach
this argument.

*also* Tex. Bus. & Com. Code § 17.50(h).[5]  To succeed on a tie-in claim, however, "the claimant must show that he is a 'consumer' as defined in the DTPA."  *Id.*  (citations omitted); *see also Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 28 (5th Cir. 2010) (per curiam) (holding that the DTPA "tie-in" provision "does not exempt [] claimants from proving consumer status" under the DTPA) (citing cases).

The DTPA defines "consumer" in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services."   Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007).  To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint."  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 765 (N.D. Tex. 2012) (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).  Because the lending of money is not a good or service, a borrower whose sole objective is to obtain a loan is not a consumer under the DTPA.  *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, (Tex. 1980)).  A borrower may become a "consumer", however, if he seeks to acquire goods or services with the loan, and the goods or services form the basis of his DTPA claim.  *Id.* (citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

Here, Plaintiff conclusorily states that she is a "consumer" for purposes of the TDCPA, not the DTPA.  (*See* doc. 13 at 3.)  She claims, in essence, that Defendant's alleged violations of the TDCPA, TILA and RESPA "are considered to be deceptive trade practices" under the DTPA.  (*Id.*)

---

[5] Although the DTPA's "tie-in" provision allows recovery for violations of other Texas statutes such as the TDCPA and the Insurance Code (*see, e.g.*, Tex. Ins. Code § 541.151 (2)), Plaintiff does not allege that it also covers federal statutes. To the extent she asserts tie-in claims for purported TILA and RESPA violations, the claims fail for this reason alone.

Plaintiff's assertion that she is a "consumer" is a legal conclusion not entitled to any deference. *See Twombly*, 550 U.S. at 555 (to state a claim for relief, a plaintiff must provide "more than labels and conclusions"). She does not state the purported "violations" that Defendant committed under the TDCPA, TILA, and RESPA. To the extent she refers to her contention that Defendant lacked authority to foreclose because it was not the note's holder, as discussed, this contention cannot support a claim as a matter of law. In addition, the note and deed of trust show Plaintiff obtained her mortgage loan from Fremont, not Defendant. (*See* docs. 15-1 at 1; 15-2 at 1.) She claims that Defendant has never shown it owns the note or loan. (doc. 1-3 at 5–6.) In her response to Defendant's motion, she emphasizes that the note and deed of trust "show that Fremont" was "the original holder of the note." (doc. 17 at 2.) Accordingly, even assuming that her claim arises from the "purchase" of the Property (i.e., a "good"), her allegations still fail to raise a reasonable inference that she is a "consumer" vis-à-vis Defendant. *See Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 746 (E.D. Tex. 2013) (finding no consumer status in part because the plaintiff "did not seek to purchase or lease any goods or services from [the] Defendants"). Plaintiff's DTPA tie-in claim also fails and should be dismissed.

### 3.      *Gross Negligence*

Defendant next argues that Plaintiff's claim for gross negligence[6] is barred by the "economic loss" doctrine because it "stems from the enforcement of the debt at issue." (doc. 15 at 23.)

"The economic-loss rule bars tort actions based solely on recovery of the loss or damage to

---

[6] In Texas, "gross negligence is not a separate cause of action apart from negligence." *Williams v. Chase Home Fin., LLC*, No. 3:13-CV-1307-G BH, 2014 WL 46233, at *7 (N.D. Tex. Jan. 6, 2014) (citation omitted). To recover exemplary damages for gross negligence, the plaintiff must first prevail on a negligence claim. *Id.* The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir.2005) (citing *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004)).

the subject of a contract." *New Century Fin., Inc. v. Olympic Credit Fund, Inc.*, 487 F. App'x 912, 915 (5th Cir. 2012) (citation omitted); *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). The "rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Lamar Homes*, 242 S.W.3d at 13 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). To determine whether a tort action is merely a repackaged breach of contract claim, the court must "look to the substance of the cause of action and not necessarily the manner in which it was pleaded." *Jim Walter Homes*, 711 S.W.2d at 617–18. The inquiry focuses on: (1) whether the claim is for breach of a duty created by contract, as opposed to a dutsy imposed by law; and (2) the nature of the alleged injury. *Hurd*, 880 F. Supp. 2d at 763 (citation omitted). If "the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes*, 711 S.W.2d at 618.

a.    Source of Duty

Liberally construed, the complaint asserts that Defendant owed Plaintiff duties to: (1) modify her loan and (2) provide her with a clear chain of title, a notice of any interest rate increase, and a remedy to avoid foreclosure. (*See* doc. 13 at 4.) Because Plaintiff does not identify specific provisions in the deed of trust or the modification agreement—the only two contracts in this case—imposing such duties on Defendant, her allegations imply that these were legal duties.

A legal duty is a general obligation imposed by law "apart from and independent of promises made and . . . the manifested intentions of the parties, to avoid injury to others." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991). To establish a legal duty between contracting parties, the plaintiff must generally "show there is a special relationship between

14

[them]." *Lowe v. ViewPoint Bank*, No. 3:12-CV-1725-G BH, 2013 WL 5273122, at *10 (N.D. Tex. Sept. 18, 2013) (citation omitted). Even absent a special relationship, a lender may still owe a borrower a duty of care "to avoid a foreseeable risk of injury to the borrower." *Hurd*, 880 F. Supp. 2d at 763 (citation omitted).

Here, Plaintiff repeatedly asserts that Fremont was the original lender, not Defendant. (docs. 1-3 at 5; 13 at 2; 16 at 1.) She claims to have "no idea" who has owned her note since its inception in 2005, and that Defendant has never provided her with any "proof" that it is the holder of the original note or the owner of the mortgage loan. (doc. 1-3 at 5.) These allegations negate any inference that there was any relationship, and much less a "special relationship", between the parties. (*See id.*) Given Plaintiff's repeated assertions that Defendant was not the lender on her mortgage, her allegations fail to raise a reasonable inference that Defendant owed her any legal duty of care to prevent a foreseeable risk of injury to her.

  b.  Nature of the Injury

Plaintiff does not request specific relief in connection with her gross negligence claim. (*See* doc. 13 at 4.) In the "conclusion" section of the first amended complaint, she seeks injunctive relief to restrain Defendant from "selling" the Property and "evicting" her from it. (*Id.* at 6.) Because the potential loss of ownership and possession of the Property appears to be the sole injury relating to this claim,[7] and because the Property was the "subject" of the contracts at issue, her gross negligence

---

[7] In a separate section of her complaint, Plaintiff contends that she "has suffered sever[e] mental anguish, emotional distress, [and] emotional suffering." (doc. 13 at 4.) To recover for mental anguish under Texas law, a plaintiff must show "intent or malice on the defendant's part, serious bodily injury to the plaintiff, [] a special relationship between the two parties," or circumstances "involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex.1997) (citations omitted). Plaintiff has not pleaded a plausible basis to recover mental anguish damages because she does not allege in her that any of these circumstances are present here.

claim is essentially nothing more than a "repackaged" breach of contract claim. This claim is therefore barred by the economic loss doctrine and is subject to dismissal. *See Choe v. Bank of Am., N.A.*, No. 3:13-CV-0120-D, 2013 WL 3196571, at *7 (N.D. Tex. June 25, 2013) (Fitzwater, C.J.) (dismissing negligence claim where the plaintiffs did "not allege injury apart from the economic loss of being denied modification and having their residence foreclosed on").

### 4.    *Suit to Quiet Title and Trespass to Try Title*

Defendant next moves to dismiss Plaintiff's claims for quiet title and trespass to try title, arguing that she "has failed to allege any facts giving rise to a reasonable inference that she has superior title to the Property or that Defendant's claim to the Property is invalid or unenforceable." (doc. 15 at 24–27.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott, 606 S.W.2d 942*, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 766 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26

16

S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  The plaintiff must prove and recover

on the strength of his own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45

S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

      "An action in trespass to try title is the method of determining title to lands, tenements, or

other real property."  Tex. Prop. Code Ann. § 22.001 (West 2000).  This action "is in its nature a suit

to recover the possession of land unlawfully withheld from the owner and to which he has the right

of immediate possession."  *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi

1978, no writ.) (citations omitted).  To prevail, a plaintiff must either: "(1) prove a regular chain of

conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title

by limitations, or (4) prove title by prior possession coupled with proof that possession was not

abandoned."  *Hurd*, 880 F. Supp. 2d at 767 (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex.

2004)).  As with a suit to quiet title, the plaintiff "must recover upon the strength of his own title and

not the weakness of the defendant's title."  *Rocha*, 574 S.W.2d at 236 (citing to *Hejl v. Wirth*, 343

S.W.2d 226 (Tex. 1961) and *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

      Here, Plaintiff alleges that she purchased the Property on December 30, 2005.  (doc. 13 at

2.)  She claims Defendant lacks any interest in the Property because it is not the holder of the

original note or a "properly perfected security instrument."  (doc. 1-3 at 6.)  Moreover, Defendant

could not foreclose on the Property because "MERS was not in possession of the original note."

(doc. 13 at 2.)  As previously discussed, her "show-me-the-note" allegations lack any merit because

they are based on a legally invalid theory.  Specifically, the deed of trust expressly granted Lender

the power of sale upon default and gave MERS the right to exercise and transfer that right to

Lender's successors and assigns.  (doc. 15-2 at 2, 4.)  MERS, and any subsequent assignee could

exercise that right without producing the original note.  *See Martins*, 722 F.3d at 255 (explaining that possession of the note is not a prerequisite to foreclosure since a "deed of trust gives the lender as well as the beneficiary" of the deed of trust, such as MERS in this case, "the right to invoke the power of sale, even though it would not be possible for both to hold the note") (internal quotations omitted).  As alleged in the complaint, Plaintiff's allegations impermissibly rely on the purported weakness of Defendant's title rather than on the strength of her own title.  Accordingly, she fails to state plausible claims for quiet title and trespass to try title, and the claims should therefore be dismissed.[8]

### 5. *Fraud*

Defendant argues that "this case should be dismissed with prejudice" because "Plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face."  (doc. 15 at 16.)

The first amended complaint references common law "fraud."  (*See* doc. 13 at 4.)  The elements of common law fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.  *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33

---

[8]  Plaintiff does not allege that she has lost possession of the Property to Defendant.  She requests injunctive relief to restrain Defendant from evicting her from the Property.  (doc. 13 at 6.)  Her trespass to try title claim fails for this additional reason.  *See Hurd*, 880 F. Supp. 2d at 767 ("Since Plaintiff has failed to allege that she has lost possession of the property, her claim for trespass to try title fails and should be dismissed with prejudice.").

(5th Cir. 2010).[9]

According to Plaintiff, when she closed on her mortgage loan she was not informed that the loan could be transferred from Fremont "to another servicer." (doc. 13 at 5.) She claims MERS lacked the power to transfer her mortgage to third parties because it did not own the note, and any assignment by MERS to Defendant was therefore invalid and constituted fraud. (docs. 1-3 at 5; 13 at 5.) Defendant's fraudulent actions "directly resulted in the foreclosure of [the] Property." (*Id.*) First, both the note and deed of trust expressly stated that the documents could be transferred at any time without prior notice to Plaintiff. (*See* docs. 15-1 at 1, ¶ 1.) In addition, Plaintiff's request to "set aside" the foreclosure sale and prevent her eviction (*see* doc. 13 at 6) fails to show reasonable reliance on her part, and shows instead her attempt to contest Defendant's purportedly fraudulent actions. Lastly, her allegation that MERS had no right to transfer her loan because it was not the note's holder is based on an invalid legal theory. *See Martins*, 722 F.3d at 255. To the extent Plaintiff asserts a fraud claim against Defendant, the claim fails and should be dismissed under Rule 12(b)(6) for failure to state a claim.

## D.   <u>Federal Claims</u>

In addition to her state law claims, Plaintiff asserts federal claims under RICO and certain amendments to TILA and RESPA and their implementing regulations. (doc. at 13 at 3.) The complaint also references the FTCA. (*See id.* at 3–4.)

---

[9]   Rule 9(b) requires the plaintiff to state a fraud claim with "particularity." *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted).

### 1.     The Dodd-Frank Act "Homeownership Counseling" Amendments to TILA and RESPA

According to Defendant, Plaintiff fails to state a claim under TILA because she "does not allege that [Defendant] is [] a creditor . . . as defined" by the Act.  (doc. 15 at 28.)  It similarly argues that Plaintiff's RESPA claim is subject to dismissal because she "has not alleged that [Defendant] is or was the servicer of the loan."  (*Id.* at 31.)[10]

Liberally construed, the complaint asserts that Defendant violated the Dodd-Frank Act's amendments to TILA and Regulation Z (TILA's implementing regulation) and RESPA and Regulation X (RESPA's implementing regulation) relating to homeownership counseling for borrowers of high-cost mortgages.  (*Id.*)

In the Dodd-Frank Act, Congress amended TILA and RESPA to provide greater protection for borrowers of federally related "high-cost" mortgages that are subject to HOEPA's protections.[11] *See* Dodd-Frank, Pub. L. No. 111-206, 124 Stat. 1375, §§ 1431–33, 1450 (2010) (to be codified in various sections of 12 U.S.C.).  The Bureau of Consumer Financial Protection (CFPB) promulgated several rules pertaining to mortgage lending, including amendments to Regulation Z and Regulation X, to carry-out the Dodd-Frank mandates.[12]

---

[10]   Although Defendant lists and briefs the TILA and RESPA claims separately, they are subject to the same analysis and therefore considered together. The complaint also references HOEPA.  (doc. 13 at 3–4.)  Plaintiff's invocation of HOEPA is relevant to her TILA and RESPA claims and does not constitute a separate claim.

[11] "HOEPA augments TILA with additional disclosure obligations and substantive requirements for particular high-cost mortgages." *Renfrow v. CTX Mortgage Co., LLC*, No. 3:11-CV-3132-L, 2012 WL 3582752, at *5 (N.D. Tex. Aug. 20, 2012). Section 1431 of the Dodd-Frank Act amended TILA to expand the types of mortgage loans that constitute "high-cost" loans.  Pub. L. No. 111-203, § 1431, 124 Stat. 1376, 2157–58.  Prior to the amendment, the definition excluded "a residential mortgage transaction, a reverse mortgage transaction, [and] a transaction under an open end credit plan. . . ." 15 U.S.C. § 1602(aa) (2009).  TILA's new definition now includes any "consumer credit transaction that is secured by the consumer's principal dwelling, other than a reverse mortgage transaction." *Id.* § 1602(bb)(1)(A) (2011).

[12] The Dodd-Frank Act transferred to the CFPB all of the "consumer financial protection functions" that were previously carried out by other regulatory agencies. *See* Pub. L.  111-203,§§ 1061–62, 1098, 2038–40.

      a.      <u>TILA and Regulation Z</u>

Section 1433 of the Dodd-Frank Act amended TILA to require applicants of federally-related high-cost mortgages to obtain counseling before securing such a loan.  Pub. L. No. 111-203, § 1433, 124 Stat. 1376, 2162–63.  Specifically, pursuant to the new legislation:

> A creditor may not extend credit to a consumer under a high-cost mortgage without first receiving certification from a counselor that is approved by the Secretary of Housing and Urban Development [HUD], or at the discretion of the Secretary, a State housing finance authority, that the consumer has received counseling on the advisability of the mortgage.[13]

*Id.* (codified in 15 U.S.C. § 1639(u)).  The creditor must certify compliance with this requirement before extending the loan.  *Id.*  The corresponding rule in Regulation Z became effective on January 10, 2014, and provides almost identical language as the amended TILA provision.  *See* 12 C.F.R. § 1026.34(5)(i) (2014).[14]

      b.      <u>RESPA and Regulation X</u>

In § 1450 of the Dodd-Frank Act, Congress amended § 5(c) of RESPA to require lenders to provide applicants of  "federally related mortgage loans" with a "reasonably complete or updated list of homeownership counselors" in the applicant's area that are certified by HUD.  Pub. L. No. 111-203, §1450, 124 Stat. 1376, 2174–75 (codified in 12 U.S.C. § 2604(b)(8)). The relevant rule in

---

[13] Section 106(e) of the HUD Act of 1968 requires that "homeownership counseling" available under programs administered by HUD be provided only by organizations or individuals that are certified by HUD as being "competent to provide such counseling."  12 U.S.C.A.  § 1701x(e) (West 2011).

[14] The rule states that "[a] creditor shall not extend a high-cost mortgage to a consumer unless the creditor receives written certification that the consumer has obtained counseling on the advisability of the mortgage from a counselor that is approved to provide such counseling by the Secretary of [HUD], or if permitted by the Secretary, by a State housing finance authority."  12 C.F.R. § 1026.34(5)(i).

Regulation X also became effective on January 10, 2014, and provides nearly identical language[15] but adds that the lender provide this list to the borrower "not later than three business days after a lender, mortgage broker, or dealer receives an application."   12 C.F.R. § 1024.20(a)(1) (2014).

Here, Plaintiff asserts that Defendant denied her "loan counseling" and a "loan modification," and failed to uphold its "agreement to reinstate the loan and modify the payments." (doc. 13 at 3, 4.)  The note and deed of trust show Plaintiff obtained her mortgage loan on December 30, 2005—five years before the Dodd-Frank Act was enacted.  (*See* docs. 15-1 at 5; 15-2 at 15.) Plaintiff repeatedly states that the original lender was Fremont, not Defendant.  (docs. 1-3 at 5; 13 at 2; 17 at 1.)  In addition, she claims Defendant has never provided her with proof that it owns her loan or is entitled to collect payments on it.  (doc. 1-3 at 5.)  Although she does not address the question of whether the Dodd-Frank Act's amendments grant borrowers a private right of action, even assuming that a private remedy is available, she fails to state a plausible claim against Defendant given her position that Defendant was neither the original lender nor a subsequent servicer of her mortgage.   Accordingly, her claims for violations of the TILA and RESPA amendments under the Dodd-Frank Act should be dismissed for failure to state a claim.[16]

## 2.    RICO

Defendant construes the amended complaint as asserting a RICO claim based on the

---

[15]  It states, in relevant part, that "the lender must provide the loan applicant with a clear and conspicuous written list of homeownership counseling organizations that provide relevant counseling services in the loan applicant's location. . . ." 12 C.F.R. § 1024.20(a)(1).

[16]  Defendant also construes the amended complaint as asserting the same TILA and RESPA claims that were implicated in the original complaint.  (doc. 15 at 27–32.)  Liberally construed, the original complaint asserted claims for failure to provide notice of the mortgage transfer in violation of § 1641(g) of TILA and for failure to respond to Plaintiff's QWR in violation of § 2605(e) of RESPA.  (*See* doc. 1-3 at 5.)  To the extent Plaintiff attempts to re-assert those claims in the amended complaint, the claims should be dismissed for the reasons stated in the first Recommendation since the amended complaint does not assert any additional facts in support.  *See Price*, 2013 WL 3976624, at *9–10.

allegation that Plaintiff was not informed at loan closing that the note could be transferred.  (doc. 15 at 32–3.)  It moves to dismiss the claim as meritless, arguing that both the note and deed of trust expressly granted Lender and MERS the right to transfer both documents.  (*Id.*)

The RICO provisions that are most applicable to Plaintiff's allegations are §§ 1962(b),(d). Under subsection § 1962(b), "a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity."  18 U.S.C.A. § 1962(b) (West 2013).  In turn, subsection (d) provides that "a person cannot conspire to violate subsection[] . . . (b)."  *Id.* § 1962(d); *see also Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) (reducing the subsections of 18 U.S.C. § 1962 to their "simplest terms").  The Fifth Circuit has held that each subsection requires: "(1) a person who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an enterprise."  *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (emphasis in original).  "To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts . . . which establish the existence of an enterprise."  *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

Here, Plaintiff alleges that "at the time of closing on her loan, she was not told that the loan would be sold to another servicer."  (doc. 13 at 5.)  She essentially argues that MERS's assignment of the loan to Defendant violated RICO because "MERS ha[d] no right to assign or sell" the loan. (*Id.*)  In her response to Defendant's motion, she adds that the assignment of her loan was invalid because she "did not execute" a document authorizing such a transfer.  (doc. 17 at 2.)  First, Plaintiff has pled no facts that suggest, let alone establish, the existence of any enterprise.  (*See id.*) Moreover, both the note and deed of trust (which were signed by Plaintiff) expressly stated that Lender could sell and transfer these documents "without prior notice to Borrower."  (*See* docs. 15-1

at 1; 15-2 at 11–12.)  In light of these documents, Plaintiff fails to state a viable claim under RICO, and the claim should be dismissed.

### 3.      Federal Trade Commission Act

As discussed, Defendant argues that the entire case should be dismissed because Plaintiff fails to state any plausible claim for relief.  (doc. 15 at 16.)

The amended complaint mentions the FTCA, 15 U.S.C. § 41 *et seq*.  (doc. 13 at 4.) Nevertheless, Plaintiff refers to this statute by title only and does not identify specific sections that Defendant allegedly violated or assert any facts in support of a cause of action. (*See id.*) To the extent asserted, any claim under the FTCA also fails and should also be dismissed.

## E.    Injunctive Relief

Plaintiff requests injunctive relief to set aside the foreclosure and restrain Defendant from taking possession and evicting her from the Property.  (doc. 13 at 6.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Bcause dismissal of Plaintiff's claims is warranted on the merits, she cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3.  Plaintiff's request for injunctive relief should therefore be denied.

## III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give pro se plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow pro se plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A pro se plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff seeks to avoid dismissal by specifically requesting leave to amend her complaint for the second time. (doc. 13 at 5.) Plaintiff failed to state a viable claim for relief in her original complaint. *See Price*, 2013 WL 3976624, at *7–11. Although she asserts different claims in her amended complaint, these claims also fail because they are factually unsupported. It appears that she has pled her best case to the Court, and an opportunity to amend is therefore unwarranted.

## IV.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED,** and all of Plaintiff's claims against Defendant should be dismissed with prejudice.

**SO RECOMMENDED** on this 10th day of February, 2014.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE